IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CESAR AUGUSTO RAMIREZ ESQUIVEL,
            *Petitioner*,

   v.

PAUL PERRY, *et al.*,
            *Respondents*.

1:26-cv-00966-MSN-IDD

## ORDER

This matter comes before the Court on Cesar Augusto Ramirez Esquivel's ("Petitioner")

Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention

by the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement

("ICE"). Petitioner, a citizen of Guatemala, received a final order of removal in 2021, but was

granted withholding of removal under the Convention Against Torture ("CAT"). Shortly

thereafter, ICE released Petitioner from custody on an Order of Supervision. On March 9, 2026,

ICE officers revoked Petitioner's Order of Supervision and detained him when he appeared for a

scheduled appointment. Petitioner contends that his renewed detention violates 8 U.S.C. § 1231,

as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that the manner in which ICE

revoked his Order of Supervision violated his right to due process. For the reasons that follow, the

Court agrees and will grant his Petition.

## I.   BACKGROUND

Petitioner is a 45-year-old native and citizen of Guatemala who first entered the United

States around 2000. ECF 6-1 ¶¶ 5-6. Around 2009, DHS officers encountered Petitioner during a

traffic stop, issued him a notice to appear, and placed him in removal proceedings. *Id.* ¶ 8.

Petitioner was removed from the United States in April 2012. *Id.* ¶ 10.

In October 2012, Petitioner reentered the United States without inspection. *Id.* ¶ 11. ICE

Enforcement and Removal ("ERO") officers encountered Petitioner in 2020 after he was convicted

of driving while intoxicated, and reinstated his removal order. *Id.* ¶¶ 13-14. Petitioner, however, expressed a credible fear of being persecuted or tortured because of his sexual orientation were he to return to Guatemala. ECF 6-3; *see also* ECF 6-4. As a result, ICE placed Petitioner in withholding-only immigration proceedings and, on March 2, 2012, an Immigration Judge ("IJ") granted Petitioner withholding of removal to Guatemala under CAT, preventing his deportation. ECF 6-4 at 1, 14. On March 18, 2012, ICE released Petitioner from custody on an Order of Supervision. ECF 6-5.

On August 20, 2023, a vehicle registered in Petitioner's name was involved in a hit and run accident in Prince William County, Virginia. ECF 6-1 ¶ 17. Almost three years later, on March 3, 2026, an ICE Acting Field Officer issued a Notice revoking Petitioner's Order of Supervision. ECF 6-6. The Notice stated that his Order of Supervision had been revoked because of the hit-and-run incident and because his case was under review for removal to an alternate country. *Id.*

On March 9, 2026, ICE officers apprehended Petitioner when he appeared at a Virginia ICE office for a scheduled appointment. ECF 1 ¶ 46. They served him with the Notice of Revocation and Release and a Notice indicating that ICE intended to remove him to Mexico, but did not give him an opportunity to contest his detention. *Id.*; *see also* ECF 6-6 at 1-3. Petitioner has remained detained since and is currently being held at the Caroline Detention Center in Bowling Green, Virginia. ECF 1 ¶ 47.

On April 8, 2026, Petitioner filed this Petition against Robert Guadian, the Field Office Director of ICE Enforcement and Removal Operations' Washington Field Office; Todd M. Lyons, the Acting Director of ICE; Markwayne Mullin, the DHS Secretary; and Todd Blanche, the Acting Attorney General (collectively "Federal Respondents"). ECF 1. The Petition also names Paul Perry, the warden of the Caroline Detention Facility. Petitioner seeks his immediate release.

2

## II.    DISCUSSION

Petitioner argues that his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*. He further argues that ICE failed to follow its regulations in revoking his Order of Supervision. The Court will address each claim in turn.[1]

### A.    Petitioner's Continued Detention

Under 8 U.S.C. § 1231, which governs the detention of noncitizens like Petitioner who have received a final order of removal, noncitizens shall be detained during a ninety-day "removal period" following their final order to effectuate their removal. 8 U.S.C. §§ 1231(a)(1)(A), (2)(A). If DHS is unable to effectuate a person's removal within the 90-day deadline, DHS may release them subject to terms of supervision. 8 U.S.C. §§ 1231(a)(3), (6). DHS may later re-detain a person who has been released on an order of supervision if, for instance, there has been a change in circumstances or DHS becomes able to conduct their removal. *See* 8 C.F.R. §§ 241.4(*l*); 241.13(h)(i)(2). DHS may also continue to detain a noncitizen past the 90-day removal deadline in certain circumstances, including where the noncitizen is inadmissible or DHS determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *see also Castaneda v. Perry*, 95 F.4th 750, 755 (4th Cir. 2024).

While 8 U.S.C. § 1231(a)(6) does not impose an explicit time limit on the length of a noncitizen's detention following a final removal order, the Supreme Court has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite

---

[1] Federal Respondents argue that this Court should decline to exercise jurisdiction over the Petition because Petitioner is a member of the non-opt out class in *D.V.D. v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). ECF 6 at 11-12. As another court in this District has thoroughly explained, these arguments are meritless. *See Serpas v. Noem*, 1:25-cv-02369-AJT-WBP, ECF 15 at 3-5 (E.D. Va. Feb. 3, 2026); *see also, e.g.*, *Garcia-Rivera v. Noem*, 1:26-cv-00229-MSN-WBP, ECF 6 at 3 n.2 (E.D. Va. Mar. 2, 2026) (concluding same). As of the date of the entry of this Order, final judgment in *D.V.D.* has been stayed. *See D.V.D. v. Dep't of Homeland Sec.*, 1:25-cv-10676, ECF Nos. 242, 246 (D. Mass. Feb. 26, 2026). Moreover, Petitioner's challenge to his ongoing detention and the revocation of his Order of Supervision raise issues that are substantively different from the claims at issue in D.V.D., which largely focus on the procedural due process protections due to noncitizens subjected to third-country removal. *See D.V.D. v. Dep't of Homeland Sec.*, --- F. Supp. 3d. ---, 2026 WL 521557, at *27-40 (D. Mass. Feb. 25, 2026).

detention." *Zadvydas*, 533 U.S. at 682. Thus, in *Zadvydas*, the Supreme Court construed § 1231 to contain an implicit limit on terms of detention, "the application of which is subject to federal-court review." *Id.* Under *Zadvydas*, a noncitizen's detention pursuant to § 1231 may only be for a "period reasonably necessary" to secure the noncitizen's removal." *Id.* at 689. The Supreme Court has explained that detention for a period of up to six months is "presumptively reasonable." *Id.* at 701. After this six-month period, a noncitizen's detention becomes presumptively unlawful if they "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Federal Respondents contend that because Petitioner has only been detained for roughly two months, that fact "alone is sufficient to require denial of his instant petition." ECF 6 at 14. But, as courts in this Circuit have recognized, "*Zadvydas* did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable." *Serpas v. Noem*, 1:25-cv-02369-AJT-WBP, ECF 15 at 7 (E.D. Va. Feb. 3, 2026); *see also Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *8 (D. Md. Jan. 9, 2026) (explaining that "*Zadvydas* did not announce a bright line rule that permits detention for at least six months," but instead created a dynamic standard under which "a habeas petitioner's continued detention may become unjustified at a period short of that six-month mark" (citing *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 370 (D. Md. 2025))); *Abrego Garcia v. Noem*, 811 F. Supp. 3d 741, 761 (D. Md. 2025) (stating that the presumptive six-month period "can be rebutted where the petitioner demonstrates that removal is not reasonably foreseeable"); *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025) (collecting cases from outside this Circuit).

Within the six-month period, a petitioner may rebut the presumption that his detention is reasonable through "proof that 'removal is not reasonably foreseeable.'" *Zavvar*, 2025 WL

2592543, at \*6 (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D.N.J. 2025)). Petitioner has supplied such proof here. Despite receiving a final order of removal roughly fourteen years ago, the government has never been able to effectuate Petitioner's removal. Petitioner has been granted withholding of removal to Guatemala, precluding his removal to the only country of which he is a citizen. Moreover, while Federal Respondents state that they intend to remove Petitioner to Mexico, *see* ECF 6 at 15, it is unclear whether Federal Respondents have obtained travel documents or Mexico's consent for his removal. Petitioner is also entitled to an interview with an asylum officer regarding his fear of removal to Mexico and, if necessary, review of his removal before an IJ before any such removal could occur. Under these circumstances, Petitioner's removal within any finite period of time is exceedingly unlikely.[2] *See Serpas*, 1:25-cv-02369-AJT-WBP, ECF 15 at 7-8 (concluding that petitioner had demonstrated that his removal was not reasonably foreseeable where he had received CAT withholding and the respondents' plan to remove him to Mexico was "still in nascent stages"); *Zavvar*, 2025 WL 2592543, at \*7-8 (ruling that petitioner's removal was not reasonably foreseeable where he had been granted CAT withholding to his country of origin and was entitled to contest his removal to a third-party countries); *Portela-Hernandez*, 2026 WL 74042, at \*14 (noting that petitioner's removal had no "definite ending point" because petitioner was entitled to contest his removal through a hearing before an IJ before his removal to Mexico could be effectuated). Because Petitioner faces indefinite detention with no reasonable likelihood of removal, his detention violates due process and he is entitled to release.

---

[2] The Court is mindful that the Fourth Circuit has cautioned against expanding *Zadvydas* "beyond the context of the *indefinite and potentially permanent* detention involved there." *Castaneda*, 95 F.4th at 757 (quoting *Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022)). But the circumstances here are far different from those presented in *Castaneda*. In *Castaneda*, the Fourth Circuit held that petitioner had not shown that his detention was indefinite and potentially permanent where he was "detained pending the completion of withholding-only proceedings that he voluntarily initiated" and that, necessarily, would come to a close. *Id.* By contrast, here, Petitioner has received CAT withholding preventing his removal to Guatemala and it is entirely unclear that ICE will be able to remove him to Mexico or any other country.

### B.    Revocation of Petitioner's Order of Supervision

The Court also concludes that Petitioner is entitled to release based on his claim that ICE failed to follow its regulations in revoking his Order of Supervision (Count II).

The Court construes Petitioner's claim as one under the *Accardi* doctrine, which requires an agency to follow the procedural safeguards established by its own regulations. *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). An agency's failure to follow those regulations "may result in the invalidation of the ultimate administrative determination." *Id.* Ordinarily, an agency's failure to follow its regulations will only render its determination invalid if an individual can demonstrate that they were prejudiced by the deviation. *Id.* at 267. Prejudice, however, may be presumed where "compliance with the regulation is mandated by the Constitution and where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Santamaria Orellana v. Baker*, No. 25-cv-1788-TDC, 2025 WL 2444087, at *5 (D. Md. Aug. 25, 2025) (internal quotation marks omitted).

The INA's implementing regulations provide that a noncitizen "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4(*l*)(1). ICE must "afford[] [a noncitizen] an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id*. The regulations also limit who can revoke an order of supervision. They state that the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody [a noncitizen] previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(*l*)(2). "A district director may also revoke release of [a noncitizen]

6

when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

Here, the Federal Respondents issued Petitioner a Notice of Revocation of Release under 8 C.F.R. § 241.4, signed by Erik S. Weiss, an Acting Field Office Director.[3] ECF 6-6 at 1-2. Yet Federal Respondents did not conduct an informal interview to allow Petitioner to challenge the revocation. *See* ECF 6-6 at 2. As multiple courts have explained, because 8 C.F.R. § 241.4(*l*)(1) is designed to protect noncitizens' fundamental right to be heard before being subjected to detention, when "ICE fails to adhere to it, the challenged action is invalid." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (cleaned up); *see also, e.g.*, *Zhu v. Genalo*, 798 F. Supp. 3d 400, 414-15 (S.D.N.Y. 2025); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1165-66 (S.D. Cal. 2025). Federal Respondents' failure to follow 8 C.F.R. § 241.4(*l*)(1) and afford Petitioner an opportunity to challenge his detention renders his current detention unlawful and entitles him to immediate release. *See, e.g.*, *Vera Briones v. Mullin*, 1:26-cv-00994-MSN-WBP, ECF 5 at 6 (E.D. Va. Apr. 22, 2026) ("[T]he proper remedy for an *Accardi* violation is a petitioner's release").

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner's continued detention violates 8 U.S.C. § 1231, his right to due process, and the *Accardi* doctrine. Accordingly, it is hereby

ORDERED that the Petition is GRANTED; it is further

ORDERED that Federal Respondents immediately release Petitioner with all his personal property; it is further

---

[3] While Petitioner does not raise this point, Weiss is a district director, not an Executive Associate Commissioner, and therefore did not have the authority to revoke Petitioner's Order of Supervision unless he determined that it was in the public interest or that circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner. 8 C.F.R. § 241.4(*l*)(2). There is no indication that he made this determination.

ORDERED that Petitioner's order of supervision is RESTORED immediately and may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4; and it is further

ORDERED Federal Respondents and any of Federal Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

The Clerk is directed to forward a copy of this Order to counsel of record.

/s/

Michael S. Nachmanoff
United States District Judge

May 5, 2026
Alexandria, Virginia

8